Kenneth R. OBERFELDER,
Plaintiff—Appellee,

v.

Christian A. BERTOLI, Defendant—
Appellant,

and

City of Petaluma; Petaluma Police Department, David Kahl, Sergeant; County of Sonoma; Sheriff's Dep't Sonoma County; Mark Ihed, Sheriff; David Bertoli, Deputy; Dennis Dewitt, Chief of Police, Defendants.

Kenneth R. Oberfelder, Plaintiff—
Appellee,

v.

Christian A. Bertoli, Defendant—
Appellant,

and

County of Sonoma, Defendant.

Nos. 01–17302, 02–15423.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 2003.

Decided June 4, 2003.

Before: KOZINSKI, GRABER and BERZON, Circuit Judges.

### MEMORANDUM *

1. Because the jury instruction precisely tracked the Fourth Amendment's reasonableness requirement, *see Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and the jury found that plaintiff "ha[d] prove[d] by a preponderance of the evidence that defendant ... used excessive force," Bertoli is not entitled to qualified immunity under *Saucier's* first prong. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (asking whether the facts alleged show that "the officer's conduct violated a constitutional right").

Nor is Bertoli entitled to immunity under *Saucier's* second prong. *See id.* (asking whether "the right was clearly established"). The law had been clearly established by the time of the shooting that police officers may not use deadly force "[w]here the suspect poses no immediate threat to the officer and no threat to others." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Indeed, defendant admits that he knew this was the law.

The district court did not err in denying Bertoli's motion for a new trial based on the Supreme Court's intervening *Saucier* decision.

2. The district court did not abuse its discretion in admitting Deyerl's undisclosed testimony to rebut Bertoli's new representation at trial that he was standing in front–not to the side–of Oberfelder's car. *See Rent–A–Ctr., Inc. v. Canyon*

*Television & Appliance Rental, Inc.,* 944 F.2d 597, 601 (9th Cir.1991).

3. Nor did the district court abuse its discretion in admitting Clark's testimony about what a reasonable officer would have done under the totality of the circumstances. *See* Fed.R.Evid. 704; *Taylor v. Burlington N. R.R.,* 787 F.2d 1309, 1315–16 (9th Cir.1986). The testimony was admitted, not to inject into the trial the issue of "officer's negligence," but to help the jury evaluate the reasonableness of Bertoli's actions–from the moment he decided to confront Oberfelder on his own, with gun drawn, to the firing of the weapon. *See Graham,* 490 U.S. at 396–97.

The district court likewise did not abuse its discretion in rejecting Bertoli's proposed "least intrusive force" instruction to counteract the alleged prejudicial effects of Clark's testimony. *See Floyd v. Laws,* 929 F.2d 1390, 1394 (9th Cir.1991). The court's instruction "fairly and adequately," *id.,* alerted the jury that "[a] law enforcement officer has the right to use such force as is reasonably necessary under the circumstances to make a lawful arrest" and that the reasonableness inquiry "must embody allowance for the fact that police officers are often forced to make split-second judgments."

4. The district court did not abuse its discretion when it concluded that introducing evidence about Oberfelder's fears of the Colombian drug cartel would be unduly prejudicial, outweighing whatever probative value the evidence might have. *See* Fed.R.Evid. 403; *Rogers v. Raymark Indus., Inc.,* 922 F.2d 1426, 1430 (9th Cir. 1991). Whether Oberfelder thought the gun-bearer was a drug lord or a reckless cop has little relevance to the reasonable-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ness of Bertoli's actions in effectuating the arrest and in firing his weapon after his attempt to apprehend Oberfelder failed. Admitting evidence about Oberfelder's alleged association with illegal narcotics would run the risk of misleading the jury into focusing on plaintiff's alleged bad acts at the expense of the main issues at trial.

■ 5. Bertoli's argument that the judgment should have been reduced by the amount of medical expenses paid for by the County Medical Services Program consortium is not properly before us. The district court relied on Cal. Gov't Code § 985(b) to exclude from the trial evidence about any "collateral source payment paid or owed to or on behalf of a plaintiff." *See* Cal. Gov't Code § 985(b). Nevertheless, the court expressly invited Bertoli to file a motion later to "request a posttrial hearing for a reduction of the judgment." *See id.* Bertoli failed to do so.

The record is unclear about the composition of the consortium and, hence, the applicability of section 985(b), *see id.* § 985(a)(1)(A) (defining "collateral source payment" to include "[t]he direct provision of services ... by nonfederal publicly funded health service providers"). But Bertoli doesn't challenge on appeal the district court's reliance on section 985(b) or the posttrial procedure set forth in that provision. Although Bertoli's brief extensively discusses the substance of the collateral source rule, it contains no discussion or citation regarding the posttrial procedure established by section 985(b) and offered by the district court, which Bertoli failed to pursue. The issue is therefore waived. *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1434 (9th Cir.1993).

■ 6. Finally, the district court did not abuse its discretion in awarding costs and attorney's fees to Oberfelder. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

With respect to the costs and the lodestar calculations, the district court made detailed findings of fact and reduced the requested amounts where appropriate. Although the district court noted that some of the fees and expenses were toward the high end, it concluded that the expenditures, as adjusted, were not excessive given the nature of the case and the quality of counsel's legal advocacy. We cannot say that these factual findings are clearly erroneous. *See Richard S. v. Dep't of Developmental Servs.,* 317 F.3d 1080, 1086 (9th Cir.2003).

While there is a strong presumption that the lodestar represents a reasonable fee–a presumption of which the district court was aware–the district court did not abuse its discretion in applying a 1.5 multiplier. *See Bouman v. Block,* 940 F.2d 1211, 1235 (9th Cir.1991). It found that the case was particularly undesirable for numerous reasons that were inadequately reflected in the lodestar. The undesirability of the case is at least partially confirmed by Oberfelder's difficulty in obtaining legal representation and the consequent need for the district court to appoint pro bono counsel. *See Guam Soc'y of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 697–99 (9th Cir.1996) (holding that undesirability of the case and plaintiff's difficulty in obtaining legal counsel justified the application of a 2.0 multiplier). For the reasons given by the district court, and because market forces are not at work in a case where counsel is appointed, *cf. id.* at 698; *see also id.* at 712–13 (Kozinski, J., dissenting in part), the district court did not clearly err in concluding that unusual circumstances existed that justified an enhancement, *see id.* at 696 (majority op.).

**AFFIRMED.**